We'll proceed first with our motions calendar. We have a petition in the case of Elaine Duke vs. Martine Hidal. Are we ready to proceed? May it please the Court, Hasha Mupen for the United States. Given the importance of this matter, I would appreciate the opportunity to reserve two minutes for rebuttal. You could do that even in an unimportant matter. Thank you, Your Honor. It's common practice. Last week, the Supreme Court, in a parallel DACA case, issued a stay of an order that granted the same type of record expansion and discovery that the District Court here ordered. No, it didn't. The case, the Ninth Circuit case, involved a different constellation of documents than this case. Substantially different constellation of documents. Your Honor, there were differences, but we submit that the difference is actually cut in our favor. Because the primary difference is that the order here is actually broader, in that it covers not just materials that were before people who provided advice to the Acting Secretary, but also materials that were provided to, considered by people who provided advice to the Attorney General. Now, to be sure, there was a difference cutting in the other direction, which is in the Ninth Circuit case, there were White House documents involved, but that couldn't have been decisive to the Supreme Court stay, because otherwise they would have limited the stay accordingly. The primary focus of our mandamus petition in the Supreme Court and in the Ninth Circuit was the materials that were considered by people who made recommendations to the Acting Secretary, and we got the stay across the board for all of it, not just on the White House. Breyer. Yeah. Could you address that? I thought it was common ground among the parties that the definition of the administrative record, as called from a Tenth Circuit case, is all documents and materials directly or indirectly considered by the decisionmaker. You adopted that definition. That's true, Your Honor. What does indirectly mean? So in a case not like this one, I think indirectly considered could, for example, cover if there were factual materials that were considered by subordinates and that was passed on to the actual decisionmaker. Well, if it was passed on to the actual decisionmaker, then it was presumably considered directly. Right. But without them necessarily, like, laying eyes, for example, on the factual evidence. Perhaps that's what indirectly considered covers. But what we know it doesn't cover is deliberative advice from subordinates. Courts have repeatedly recognized that deliberative advice is just simply not part of the administrative record. The D.C. Circuit has repeatedly held that. Judge Engelmeyer has an excellent opinion in the district court. But is that different from the complete record that the decisionmaker considered in making her decision? We think that — and the complete record the decisionmaker had. We don't think that deliberative materials are, quote, unquote, considered within the meaning of that 10th Circuit statute. Well, wouldn't deliberative materials be essentially privileged anyway? Because what the order talks about is the documents that were considered by the second-level subordinates, or the first-level subordinates, right? Yes. So they are, in addition, privileged, but it's a serious problem. Excuse me. So what would be deliberative about substantive documents that came to the person who advised the decisionmaker? That's different than what advice was given by the decisionmaker, isn't it? Potentially it is. And in a case unlike this one, where the decision that is being made is a factual evidentiary one, that might be well true. That if there was factual material in front of a subordinate, that might be what is indirectly considered. Well, how do we know that there was — are you representing to us that there is no factual material that was considered by any of these individuals who advised Secretary Duke? What I'm representing is that there is no factual material that's relevant to the rationale that the Secretary adopted. And that was, I was going to say, the second part of the error that the district court made. Well, here I'm puzzled, too. Is it the case in ordinary administrative reviews that if a large volume of material comes to the decisionmaker, including various things that are clearly relevant to the project that the decisionmaker has, can the decisionmaker say, I'm not going to consider this stuff because my reason is this, and therefore the only administrative record are the things that bear on what I say are my reasons, rather than the entirety of the record that came to the decisionmaker for the decision that is relevant to the decision? So you have to separate out two different questions, Your Honor, the question of what the record is and the question of how that's reviewed under the APA. For purposes of what the record is, we think, as Judge Watford pointed out in his dissent, and there are some cases that I'd like to discuss on this point, that the agency decisionmaker's rationale shapes the scope of the administrative record. If the agency makes its decision based on, for example, litigation risk, rather than based on some other factor like cost and benefit. But how believable is that? It basically boils down to a one-page memo from the Attorney General that the Secretary relied on in saying that a program that applies to 4.3 million immigrants is the same as 800,000 that's been in place for the DACA recipients. How believable is that, that that constitutes the entire record where she said, okay, I'm afraid that the Fifth Circuit decision applies to DACA as well, and I'm going to terminate that program. How believable is that, that someone would make that kind of decision just on that basis? Again, Your Honor, so if that's the rationale, if litigation risk is the rationale, no one's saying that there wasn't subsidiary analysis of the litigation analysis. The point is that that is all legal. How do we evaluate it, then, and say it's not arbitrary or capricious? Because it's a legal conclusion, Your Honor. You can judge the arbitrary and capriciousness of that legally. Wait, wait, wait, wait, wait, wait. Litigation risk is different from a determination that a program is illegal, right? If you make a decision that this is unlawful, that's presumably based on legal materials. But if you're assessing risk, do you know of any business that decides to stop doing something because of a litigation risk without reference to how important the considerations are for doing what that business is doing? Risk is always a risk-benefit analysis, isn't it? So that's a fair point, Your Honor, but two points about that. First of all, what you're essentially saying is that's a question about whether on the substance of this decision, if it was a litigation risk analysis, if Your Honor thinks that it was arbitrary and capricious to consider litigation risk without considering the cost and the importance of the program, then that's potentially a ground to set aside decision on the merits. Well, yes, yes, exactly. First of all, let me disavow. I'm not saying anything about the merits. I don't know anything about the merits. The question is how could a court evaluate whether the decision is arbitrary and capricious on exactly the argument that you just outlined without knowing what information was before the decisionmaker, directly or indirectly, about the costs and benefits of the program that she is being — considering terminating on the basis of risk? The way you can is because the Acting Secretary's letter explains the things she considered. She didn't talk about the costs and benefits of the program. So if you think that that is something she had to consider, it would be set aside. You don't need to look at a record, an expanded record, to figure out what she didn't consider. I'm not sure about that. Why would — if information is potentially coming in about the costs and benefits of the program that are entirely supportive of the view that there's no particular point in doing this anyway or we have serious reservations about whether this is a good policy idea or not, and there's litigation risk, then that looks like a very different decision from the standpoint of arbitrary and capricious than one that says I'm terminating this on litigation risk, notwithstanding that this is an extraordinarily valuable program based on all the That's fair enough, Your Honor. And if the Acting Secretary had wanted to defend her decision on a broader rationale like that, she could have. She chose not to. But, you see, this is the whole problem. And maybe we ought to get to whatever cases you're relying on, because I'm not an administrative law expert by any stretch. But it has not seemed to me to be the case that where an administrative agency engages in hearings, compiles all kinds of information, has thousands and hundreds of thousands of pages of record, that when the administrator of, say, the EPA suddenly makes a decision that says, well, actually, I'm not considering any of that record except this one little slice, that the record that comes to the court for appeal is based on the cherry-picked documents that support that particular little slice of the decision. So let me say two things about that, Your Honor. So the first thing, and probably the most important, is that this isn't a cherry-picking situation, because unlike in the sort of hypothetical you're talking about where you've got a factual decision and there's a risk that the agency might put in the good evidence but omit the bad evidence, there's not any evidence here. This is a question about whether there was a likelihood that this policy would be invalidated by the courts. There's nothing to hide. Breyer. But this puzzles me, too. I mean, normally litigation risk, what I think of litigation risk in the ordinary private context is not just we're going to lose this case, but that leads to some terrible consequence. If the litigation risk is the risk that the program will be terminated, and so you decide to terminate the program, I'm not sure I understand what is the risk. It's like saying, well, if I go this course, there's a 40 percent chance that I'm going to drown. So I'll just drown myself. The point isn't about risk per se. The point is that this is a discretionary non-enforcement policy. Oh, and that's a whole different argument, isn't it? Well, no. I mean, if it's a totally discretionary policy and the decision is I don't want to do that anymore, that's not about litigation risk. No, but what I was going to say, Your Honor, is that in the context of a discretionary non-enforcement policy, we think it's perfectly rational to say this policy, there's a high likelihood of it being unlawful and being held unlawful, and for that reason we want to end it. But isn't a judge entitled to be skeptical about that argument in light of an opinion from the OLC establishing the validity of the program? Your Honor— I mean, isn't a judge entitled to say, you know, I'd like to see documents, you know, beyond the half-page letter from the Attorney General? Your Honor, that OLC opinion was written before a district court enjoined expanded DACA, before the Fifth Circuit affirmed that, and before four justices of the Supreme Court affirmed that. It is perfectly—this is the merits, underlying merits issue, but it was perfectly rational for the Acting Secretary to determine in light of those judicial decisions that DACA, just like expanded DACA, would be struck down. But the more fundamental— Let me ask you about litigation risk to follow up on Judge Parker's question, and that is, one of the bases that the Attorney General identified in his one-page memo was his conclusion that the Fifth Circuit found the program to be unconstitutional. Now, we know that's not accurate. And then when the Secretary issued her memo, she relied just on the APA. Doesn't that create some additional skepticism on our part? What's the litigation risk analysis here, if that was just incorrect in the Sessions memo? I don't believe that's correct, Your Honor, that he attributed the unconstitutionality holding specifically to the Fifth Circuit. But more importantly, even his own memo says that the conclusion is that it would likely be invalidated by the courts. And that is what she quoted in her memo, is that his conclusion that it would likely be invalidated. And she said in light of those decisions and his opinion— But she relied just on the APA decision, part of the decision by the Fifth Circuit, right? So she said in light of their decisions and his opinion, she thought it should be— And she specifically said the APA problem. I don't believe that she said that in the operative sentence of her opinion. But again, I think the fundamental point here, you might agree or disagree with the underlying decision. You might think it was arbitrary and capricious. But you have her rationale. It is a legal rationale. It's a rationale based on legal policy. There is no fact we could be hiding. How does any of this get you closer to Mandamus? So the reason I think it gets us to Mandamus is because it is well established that deliberative materials are not part of an administrative record. The Supreme Court has said again and again that when you adjudicate agency action, you don't try to probe the subjective mental state of the decision maker. The D.C. Circuit and other courts have held again and again that that means that But, you know, on the basis of this record, we really kind of don't even know what documents we're talking about. We don't know whether they're rock-solid grounds of privilege or frivolous grounds of privilege. It doesn't matter whether it's privileged. The point is that it's deliberative. And deliberative materials are simply not in the administrative record. But we don't even know that they're deliberative. The documents we're talking about are not, as I understand the district court's there is no request for the content of what any advisor to the secretary said. You should do this. You shouldn't do this. I'm worried about it. I'm not worried about it. The request is for the documents that those people considered, and those documents could be deliberative documents, I suppose, as to which some kind of privilege attaches or that might be appropriately excluded, or they might be factual materials that you would expect to go into the decisions of the people who are deliberating. So that's what I'm concerned about in the first instance. Why is that not part of the administrative record in the sense of things that are directly or indirectly considered, given that indirectly, I can't imagine an understanding of indirectly that doesn't include the documents that informed the person who gave advice? Two points on that, Your Honor. The first is I think it's actually broader than what you're saying, because what the order is is both anything that was before the acting secretary or anything that was before a first-level subordinate who advised her. Right. So that would clearly cover the recommendations insofar as the recommendations were before the acting secretary. The second point is, yes, it's possible that there are certain things that we've described as deliberative that someone, even potentially a court, might disagree about. But that's always the case when you're drawing a line. Just take, for example, the test you articulated at the outset, directly or indirectly considered. In the first instance, an agency always has to draw the line of what were the materials that were directly or indirectly considered and what weren't. No one creates a privilege log or any type of log for the documents that are just on the other side of the line. The agency has to make that determination, and there's a presumption of regularity that attaches to that. And unless they have compelling evidence that we drew the line incorrectly, that's the end of the matter. And that's the same thing here. We're talking about deliberative material, and they have no suggestion. The relevant lines between whether it's deliberative or whether it's factual, they don't have any basis to say that there are factual documents that are ---- Excuse me. Excuse me. Has the government in this discussion below made the argument that we're prepared to produce factual materials but not deliberative ones that fall within the category of materials considered by the Secretary or the first-level advisors? That's what I said. We have two points. Our first point is that deliberative materials are categorically out. Our second point is that the only factual materials that should be in are factual materials that are relevant to the ---- I understand that that's the second argument. Let's get back to that first one. Right. Was that argument presented to the Court that if we lose on the first ground, then the second ground only applies to deliberative materials, and we would like you to ---- you, Judge Garifus, to narrow your order to exclude deliberative materials? We repeatedly argued at every turn that deliberative materials should not be in the administrative record. I think if you look at every filing we ever made in this case below, it was always that our lead submission was that deliberative materials should be out of the record. Well, would you be satisfied with an order that modified the district court's order to exclude materials that are deliberative? So ---- Or is it your position that everything is deliberative, so that would be a useless exercise? So two things. One is you would have to also say that we don't have to create a privilege log for the deliberative materials, because that's the significant burden here, is that they are saying that we have to go through ---- Let me go through this. Your briefs are filled with rhetoric about millions of documents and thousands of people. And I'm not sure I understand how that could be in light of the actual order entered by the district court, which refers to first-level advisers. How many people are first-level advisers on a decision like this to the Secretary of Homeland Security? So the numbers are, for first-level advisers, the numbers are clearly smaller. So I ---- Small like what? Like give me a ballpark. I don't mean, you know ---- Above 20,000 documents, roughly, Your Honor. 20,000, not millions of documents. The reason we said millions is because that would cover what both Judge Ornstein's initial order was ---- But we're not ---- but that's past. We're in a different world now, right? That's why we're not, Your Honor. It's also covered by their discovery requests. Their request for reduction is for every document in the agencies that concerns DACA. And in order to collect ---- And has the district court entered an order approving that request? No. He didn't. All right. So you're talking about mendemising the district judge, right? So we are trying to focus on what did the district judge order that is clearly, unequivocally, beyond the power of the district court to do. We're not reviewing what your adversaries might like to have and giving an advance order to the district court as to how to decide discovery requests that the district court has not yet addressed. Well, with all due respect, Your Honor, we did argue, and the district court has held, that discovery can commence. Our point is that discovery is categorically and wholly improper in an APA case such as this. And it's also categorically and wholly improper even on their equal protection claim. But why isn't that ---- Yeah, sure, fine. But why isn't there a ---- another remedy which is asking the district court for a protective order that limits that discovery in some of the ways that we've been talking about, rather than coming to us to say that the district court has somehow completely gone beyond anything that's reasonable when the ---- because their requests are for millions of documents when you haven't asked for that to be narrowed by the district court? Because our basis for mendemis is not the burden. Our basis for the mendemis is that it is legally improper to do this. Even if it was a single piece of paper, it would be improper. Now, we pointed out the fact that it's not a single piece of paper. They're asking for millions of documents. But our basic submission is that this discovery is improper. And I would note that these are the exact same sort of arguments that the California plaintiffs made both in the Ninth Circuit and to the Supreme Court. And five justices of the Supreme Court thought that we were likely to prevail and was granted to stay on both the administrative record and the discovery in that case, Your Honor. And it's because it is black-letter administrative law. Am I mistaken that there are ---- that the magistrate judge's order with respect to discovery is actually limited to a couple of the categories of claims that they've made? In other words, I did not understand the magistrate judge's order even to say that their requests for discovery into everything that is relevant to the DACA program was approved. Am I mistaken about that? I don't think he has ruled yet on particular subsets of discovery one way or the other. Oh, even the magistrate judge hasn't ruled on particular ---- He's authorized discovery. And again, our threat is ---- But discovery as to what? Their claims, all of their claims. It wasn't one claim or another claim. It was all of their claims. And we said there should be discovery on none of their claims. I'll be interested to see what they ---- maybe they are in agreement with you because they'd like it to be the case that they've been allowed to pursue all this discovery. But we'll see what they say. Your Honor, I did promise to give you that one case. I would like to do that real quick. So it's a case, and I apologize it's not cited in our briefs. It's Sierra Club v. Kossel, C-O-S-T-L-E. The site is 657 F. 2nd, 298. It's a D.C. Circuit case where in an agency proceeding, there was White House contacts between the White House and the agency. And there was no log and no record of those contacts. And what the D.C. Circuit held said, the agency didn't rely on those contacts as the basis for their decision, and therefore they don't have to include those contacts within the record. That's making exactly the point we're making. It's exactly the point that Judge Watford made. That's also related to White House documents which are not part of this order. But you're saying their rationale was broader than that. Their rationale didn't turn on the specificity of the White House. It was that when it's not, that's not the basis of the decision, there's no reason to include it within the administrative record because if there are. And that's your best case, I take it. That's the one we really need to look at? I think that's the best on this second point, on this point that factual material that's irrelevant to the decision need not be considered. But for our primary point, which is the bulk of what's going on. And that's a case that was not in your brief and therefore presumably was not cited to the lower court either? I think that's probably right, Your Honor. But again. But it's a case. It's worth what it's worth. For what it's worth. The reason. The D.C. Circuit knows administrative law better than I do. The focus has always been on the deliberative materials point because there's very little factual material in. For example, California has pointed out repeatedly that on our privilege law, there's like Washington Post articles. Given the nature of this decision, that it was based on litigation, there's just very little factual material that is relevant. And so it shouldn't be a surprise that there's not a lot of factual material, period. And that's why we've never focused on it. But the real key, and the thing I would like to emphasize most, is their point that deliberative materials are part of the record or have to be subject to a privilege law would be a revolution in administrative law. Under their theory, every time an agency adjudicator has a bench memo, he would have to have a privilege law for that. And that just doesn't make any sense, and that's just not how. You've used it far more than you need to. Thank you very much, Your Honor. We'll still give you the time you've reserved. Mr. Rosenthal? Good morning. May it please the Court, Joshua Rosenthal for the Bataya Vidal Respondents. The October 19th orders that are at issue before the Court today represented reasonable and measurable responses in the face of the imminent end of a program that benefits more than three-quarters of a million people and a clearly and facially inadequate administrative record. To begin with some of the differences between our case and the Supreme Court case, one important difference, given that the Supreme Court's stay order is unreasoned, is that in California, Judge Alsup had a number of documents prepared to be released to the public imminently, had there not been judicial intervention. That's not at issue here. We haven't even seen any documents. We haven't seen a privilege log in this case. Should we not wait and see what the Supreme Court has to say about that order? I agree, I think, with you that the order is distinguishable in a variety of ways from the order before the Supreme Court from the one here. And it may be that whatever the Supreme Court decides, even if it decides adversely to your side, will be not particularly relevant. But given the arguments that are made here and the breadth of those arguments and the breadth of the arguments that the government has made to the Supreme Court, it's also possible that the Supreme Court decision would just put a spike in your entire argument, right? That's entirely possible. In light of the urgency of this matter — But, yeah, that urgency is urgent for the Supreme Court, too. And it's so urgent that they set a briefing schedule that was, you know, puts the rocket docket to shame, right? That's certainly true, Your Honor. So we assume they're going to act expeditiously. We certainly hope so. But in light of the fact that there are no dockets — documents immediately set to be revealed, there's significant further proceedings on discovery that are left to be done on discovery and on the administrative record before the district court. Those are all matters that Judge Garifas and Judge Orenstein can take into account in the first instance when dealing with the actual issues in concrete particularity and not in the abstract as they're presented to the court today. Moving on to the reasons why the administrative record is incomplete and why it was not a clear abuse of discretion for Judge Garifas to find so, I'd point out one category of facts that's quite important. It's so important that then-Acting Secretary Duke, in her memorandum, described it as significant in footnote one, and that's this historical question of how much discretion was actually at play in the operation of the DACA program. That's a factual question. It's a factual question in possession of somebody within DHS, and presumably since it showed up in this memorandum, it was presented to Secretary Duke. But because the standard that the government applied in defining the administrative record was a standard of only those materials, those documents that were non-privileged and personally considered by the Acting Secretary herself, any of those documents that may have been communicated through a subordinate are simply outside of this administrative record and aren't the work. I suppose this goes to the merits in a sense, but I'm puzzled about if the basis for this entire program, the legal basis for the program is essentially prosecutorial discretion, that that is what gives the executive the power to not enforce certain legal rules according to their strict letter, which we all know happens every day in the Justice Department. Does that mean that every time the Justice Department changes its priorities or decides that they're no longer going to, for example, not enforce the federal marijuana laws in the same way in states that have legalized marijuana as in other states and a decision is made to reverse that memorandum, is that an administrative decision that is subject to review under the APA and that a court will compile a record or ask for a record and then decide whether this was appropriate or not? Well, I don't think that kind of broad rule on prosecutorial discretion in the abstract is at issue in this case. We're talking about a very specific decision that rather than enabling or exercising prosecutorial discretion, cut off prosecutorial discretion, went from a program where there was an ability to impart. Well, it might be exercising prosecutorial discretion on a case-by-case basis, but it says we're no longer going to do it this way. We used to do it this way. Now we're going to do it that way. Isn't that what this is all about? Well, it's about more than whether we'll do it this way or that way. It's about whether a certain set of people will have any access to the exercise of prosecutorial discretion at all or, as is reflected in the instructions of their — of the Duke memorandum, their applications and their requests will be rejected, not denied in an exercise of discretion, but rejected based solely on when their piece of paper happened to arrive in the mail. There are requests for access to a particular program that is part of prosecutorial discretion. It says nothing about whether the agency will actually start removal proceedings against anybody or, if they do, whether that person can make the same kind of appeal that people make to prosecutors and government lawyers all the time, that you should probably drop this case for specific reasons. Is there anything that says they're not going to do that? There's nothing that necessarily binds a future enforcement litigator from ICE or CBP from — in how they'll conduct a specific individual adjudication. But there is a difference in this particular form of prosecutorial discretion available in deferred action, and that's a particular form of affirmative prosecutorial discretion that carries with it the ability to apply for work authorization and other — Did the chronology make a difference where Secretary Kelly a couple times said shortly before the termination of this program, we're going to keep DACA? Twice said, even though we don't like DAPA, we're restricting it, then we're eliminating it, but we're still going to keep DACA. But in the span of three days in September, the program terminates. Is that part of your position, too, that that kind of a decision is not really prosecutorial discretion? It's a policy decision. It's a policy decision, and it's a policy decision that affected a substantial number of people who relied on this program. And so similarly to the Supreme Court's guidance in the Perez v. Mortgage Bankers decision, where regardless of whether notice and comment is required, regardless of the form of the program, we do believe notice and comment was required. But where there's a significant reliance interest, where people have built expectations around the existence of a program, there's a higher bar for arbitrariness and capriciousness, and that's a higher bar that the court needs a full administrative record to reach. To address briefly, unless the court has more questions — Would you like some more time? I would appreciate more time. Why don't you take another minute, then? To address briefly the question of discovery, we do believe that we're entitled to discovery on the equal protection claim. The district court did not decide whether we were entitled to discovery on that claim in particular, but the question, we believe, is before this court. And the equal protection claim is wholly separate from the Administrative Procedure Act. That's what I thought at one point in reading the papers. But what is it that you think the government is required to do now on what timetable under the district court's orders? The government is required to respond in some way to the request for production, whether that's moving for a protective order, whether that's partial production, but to proceed in the ordinary course of litigation discovery. If they have a problem with the order, then that problem can be presented to the magistrate. So if the government asked for such a protective order, that, in your view, they would not be in contempt of any ruling that the — and said, we're not going to provide anything until we present to you this request for a protective order. You would not be going to the district court saying, that's outrageous. It's already been decided that they're supposed to produce X, Y, and Z, so they have to at least produce X, Y, and Z? Well, on the administrative record, there is a set of materials that they're obligated to produce. But to the extent that they — On the discovery front. But on the discovery front, all that's been — all that the district court has said on discovery is that discovery won't be stayed, that discovery goes forward in the ordinary course. And they've exercised privileges in the one-and-a-half depositions that we were able to take before this day was entered. They've entered objections and not responded. Okay. But depositions have gone forward, and you've made document requests. Is that the situation? That's correct. And we've received 56 pages of documents so far. We expect that there are more responsive documents under our request for production. But there's been no — the objections have been lodged, but those objections have not been presented to the magistrate judge. That's the appropriate next step in this circumstance. And I want to go back to — They've not been ruled on, essentially. They haven't been ruled on. So I want to go back. You said earlier the — you think that you're entitled to discovery on the equal protection claims. I don't mean to say that you've conceded that somehow you're not entitled to discover anything else. But just on that issue, you said you think you're entitled to discovery, but that hasn't been ruled on, but that issue is before this Court. How could that issue be properly before this Court if it has not been ruled on below? Well, the district court ruled generally on the question of whether the government was entitled to a stay of discovery. There were a few reasons why the government might be entitled to that stay. The district court ruled that on the procedural due process claim — on the procedural due process claim, the government wasn't entitled to a stay, and so discovery would go forward. So there wasn't a need to address equal protection. Now that particular procedural due process claim is no longer in the case. I'd point out that on Monday we added a new subsequently occurring procedural due process violation that's not at issue before the Court today. But the equal protection claim is still there, and that underlying ruling that — But that hasn't been ruled on because the district court authorized discovery on a due process claim that is now moot or is not in the case anymore. That's correct. So what is it that discovery is going forward on? So there's the question of whether discovery — whether the government is entitled to a stay of discovery. The rationale that the district court gave for why they weren't entitled to a stay of discovery no longer applies, but it's our position that this Court can apply a different rationale. But if — again, I keep wondering why we are here, at least on the discovery issue. If the only reason that the district court gave for denying a stay is moot, then why isn't the next step to go back to the district court and argue about whatever other reasons there might be for granting a stay or denying a stay? We'd be happy with an order simply sending it back to the district court for a resolution in the first instance. However, we expect that if the district court does grant discovery on the equal protection claim, we'll be right here again. And so — But maybe it won't. And going back to the — and none of this has to do with, I understand, the administrative record issue, which is a separate issue than the discovery issue, but I'm just trying to piece out what is and isn't an appropriate mandamus operation. The question is whether Judge Garifus clearly abused his discretion in denying a stay of discovery. As regards to that procedural due process claim, that claim isn't there anymore, and so that aspect of his reasoning no longer applies. But there was an open question before the district court about whether discovery was appropriate on equal protection. We believe that it is under Webster v. Doe and other cases. And so whether this court would prefer to send that issue back to the district court for resolution in the first instance, we think it might be more efficient to resolve it now. Yeah, lawyers always think, and they're probably right in the case-by-case, that it's more efficient for us to decide everything up front, and then they don't have to go through the rest of the litigation. But that would be a disaster for the administration of justice in general, and we, for all kinds of reasons, don't do that. Well, never mind. That was a comment, I guess. No need to put a question mark on it. I'm sorry. Thank you. Thank you. So Ms. Dasgupta is next. Before you get started, can I just ask the obvious question is, why do you think that we're not bound by the Supreme Court's stay in the Ninth Circuit case? Where do we have room to move in light of that stay with the cases that are so similar, comparing our case to the Ninth Circuit situation? How do we have that flexibility here? These cases are not similar, Your Honor. As this Court noted, and as my colleague, Mr. Rosenthal, noted, the crux of the government's papers to the Supreme Court in the Ninth Circuit case involved concerns about having to turn over particular documents, and especially the relationship between the district court orders and White House documents. So in the Ninth Circuit case, the Ninth Circuit judge said that the scope of the administrative record needed to include certain White House documents, and those White House documents also needed to be enumerated on a privilege log. And the district court had occasion to examine some documents in camera that the government was claiming privilege as to, and made specific rulings that particular documents were not privileged and needed to be released. And so the government went to the Ninth Circuit, and then the Supreme Court saying that they did not want to have to release those particular documents. They should not have to enumerate White House documents on a privilege log. And Justice Breyer's dissent doesn't really focus on that either. It just kind of is a general dissent about why the majority was wrong to enter the stay, right? Well, that's exactly right, Your Honor, that the justices who voted to grant the stay didn't explain on what basis they voted to grant it. But the issues in the papers before the Supreme Court were very different. And it's unlikely that the requirement to complete the administrative record, which is the only thing at issue in this case, was the basis for the stay. Because one component of the stay analysis is irreparable harm. But you're asking us to essentially distinguish a Supreme Court decision that hasn't been made yet to the extent that all they did was enter interim relief, then ask for expedited briefing, and presumably then they're going to resolve this, that case. And when they do, then won't we be in a much better position to decide, oh, well, if that's the ground, it has nothing to do with this case. Or, oh, well, if that's the ground, it really trumps all of these efforts of whatever sort. Well, the differences between the arguments being made to the Supreme Court and the Supreme Court's reaction to those arguments show that there are no legal and practical considerations that require this court to wait. So, for example, to go back to the question of irreparable harm, the requirement to complete an administrative record can't on its own impose irreparable harm. What imposes irreparable harm is the requirement to turn over particular documents that are assertedly privileged. So under the standard that the Supreme Court would have been considering, it's very unlikely that the basis for the stay request would have been the administrative record. I understand that — But their argument is not only about privilege. Their argument is that the specific order to complete the administrative record — I mean, in fact, it's not that, right? It's really about the privilege log, but that, as I take it, is based on what the judge apparently believes is what would otherwise be presented as the administrative record, and therefore, privilege is the only thing that would stop the production of certain documents as part of the administrative record, and therefore, there needs to be a privilege log, right? So the district court is not just saying you have to give us a complete record. Their position is we did. The district court is saying you have to give a certain universe of material because that's what I deem to be the complete administrative record, right? That's right. That universe included White House documents that they objected to. So why wouldn't it be irreparable harm for the government to have to disclose materials, even if they are not technically privileged, that they don't want to disclose, that will now be in the public record, and the only rationale for disclosing them is that they are part of the complete administrative record? A couple of different points to that, Your Honor. Nobody has ordered them to disclose any particular record to that. That's how premature we are in this case. All the district court has said is that based on their representations to the legal standard they used in compiling the administrative record, the district court knows that record not to contain documents that should be in there, and the district court has said that this is what the legal standard is. Please supply the documents that fit within the legal standard. If you're going to withhold some documents, log them on a privilege log. This does not include White House documents. You don't have to produce White House documents. You don't have to log White House documents. They are documents that are not privileged necessarily, but is there not a live dispute about what the complete administrative record does or doesn't consist of? There is a dispute in that, although, as Your Honor noted, in district court, petitioners acknowledged what the appropriate standard is. They have resisted producing documents that comply with that standard. So they've said — But they interpret the standard differently. And they're asking us to endorse their description of the — their definition or their interpretation of that definition. Well, a large part of why they object to that standard just appears to be based on either a misconception or a factual error. They keep on insisting that this is all about deliberative documents, that this is mental processes of decision-makers, that all we want are deliberative documents. This is not about deliberative material in the first instance. They haven't even asserted deliberative process privilege. What this is about is, are there documents, for example, concerning costs and benefits and burdens that the decision-makers considered that aren't enumerated in the record? So the final determinations here by the Department of Justice and the Department — the Administrator did not — the Secretary did not consider that material. Here's all that she considered. Everything else she ruled out as irrelevant to the decision-making. And I guess what is puzzling me, I was asking Mr. Mupem, well, you know, can — wouldn't that, if that happened, be some evidence of arbitrariness and capriciousness if there was factual information that maybe should have been considered? On the other hand, I ask you, isn't that questioning what her actual decision-making process was? You're basically saying, no, she didn't do it based on this litigation risk analysis. She did it after actually taking into account some unspecified other stuff. Well, I'd like to get to the question of the legal standard that they produced and why that's incorrect and why that's problematic. But to take Your Honor's question about her decision-making process, her memo references considerations that are just not fleshed out in the administrative record. So the Attorney General and Secretary Duke both referred to certain costs and burdens and administrative complexities cited as part of their litigation risk analysis. As Your Honor noted, there is some component of costs and burdens and complexities that it's going to be — that's going to be factual in nature. And so at this stage, nobody has suggested to the district court or to the government that they need to turn over opinions or analyses. We're not even at the stage. Where we are right now is that we know that the Sessions letter says that an immediate wind-down was required because of costs and burdens that were going to be imposed on DHS if they did otherwise. Secretary Duke agreed with that, and she added on that there were administrative complexities that needed to be dealt with. So you're saying there is nothing in the administrative record that was presented that justifies or even references what those costs and burdens would be? That's exactly right, Your Honor. We don't know what they are, but they must have some factual component. So without going into anything deliberative, we know this record is complete, and that was definitely part of what the district court considered. But my friend on the other side also noted that deliberative process materials aren't part of the record, but that the circumstances under which a court could order completion of the record would be if the court knows that they used the wrong legal standard. Well, here we know that, because what they did— The costs and burdens that you just mentioned, though, in the Sessions memo, that's about winding down the program. That's not the reason for the decision. The reason for the decision is we think it's illegal now in light of the Fifth Circuit decision. The costs and burdens in his memo, at least, are just about, it's going to be burdensome now to wind down the program. Am I misreading that memo? Well, the questions are intertwined because the question has to do with how and why they acted why they acted. As Judge Lynch noted earlier, even if they thought that there was a court that had expressed skepticism about a similar program, the decision to act preemptively and terminate this program altogether immediately right now, Sessions and Duke both say that the decision to act in that way had to do with certain costs and burdens or complexities that would happen if they waited for a court to issue a ruling. Now, what would those be? It's facially implausible, because ordinarily when courts order a program to be altered in some way, they would give the government a reasonable time to react. And so it's particularly important that a reviewing court understand what these costs and burdens are. But the district court also quite appropriately expressed a great deal of skepticism about the legal standard the petitioners said that they used, because it cannot be correct and it, in fact, would be harmful to accept a standard like this, not just under the specific facts and concerns of this case, but in general in an administrative record case, because petitioners have acknowledged that what they did was they presented the district court with – Your time has expired. Do you want to take another minute? That's right. I think it's important that this court understand that the legal standard – I would love to do that, Your Honor. Thank you. That the legal standard that petitioners used seems to exclude materials that they regarded as unhelpful to their position. In a letter to the court that we reference in our opposition papers, they describe having excluded something that the acting secretary received that was relevant and bore on her decision to terminate DACA because she chose not to consider it. They've acknowledged that they didn't provide records of any information that was summarized for the acting secretary, for her subordinates. That would include factual information. And their descriptions of the documents that they have not produced establish that such information almost certainly exists, because they've talked about producing all the materials that were before her but not, for example, the documents related to the termination of DACA that were considered by lower-ranking DHS personnel, including her direct subordinates. So my friend said if a court has concerns about the incorrect legal standard being used, then a court can order completion of the administrative record. And that's exactly right. That is a well-established law. It follows both the requirements that the APA itself sets for administrative review, that numerous appellate cases have considered, and that the Supreme Court has said when recognizing that agency review has to take place on the whole record. I'd just like to note we make in our opposition papers some arguments that the decision should be ‑‑ We've read all your papers. That's right. It should be dismissed as moot. Thank you. But we have reviewed all your papers. Thank you. Mr. Mupan, you have a couple of minutes. Your Honor, I'll try to make five quick points. The first, on the Supreme Court, if you look at our papers, you'll see a very stark similarity with our briefs here. Our position was not limited to the White House documents, nor was it limited to having to produce documents. Our primary point is that we should not have to include deliberative material in an administrative record, nor should we have to do a privilege log for that. And that is a significant burden, and that is a significant irreparable injury to the government to force us to go through tens of thousands of documents of high-ranking government officials and create a privilege log. Remind me, the stay in the Supreme Court is pending what? It's pending our mandamus petition and cert petition, which will be fully briefed as of the end of this week. And it's the Ninth Circuit mandamus. Right. It's what was from the Ninth Circuit. Technically, it's a mandamus petition to the California District Court. Judge Olson. Judge Olson. But the mandamus petition is also before the Supreme Court. It is there and will be fully briefed as of the end of this week. The response brief came in yesterday. Our reply brief will go in probably by tomorrow, and then it will be fully briefed and for the Court to act. So we do think it would be advisable for this Court to wait to see what the Supreme Court does. And that application is seeking a stay pending consideration of the cert petition? We've already gotten the stay. The stay is pending the Court's consideration of our mandamus petition or cert petition. So now the Court is considering whether to either grant mandamus outright or to grant our cert petition. While it's making that decision, we already have a stay in place. The third point I'd like to make is on their factual arguments. They've pointed to two things today. They said costs and benefits, and they pointed to, like, the level of discretion that was exercised under DACA. The key is on both of those. There's nothing in the administrative record we've produced on those. So if this Court, on the merits, thinks that that's decisive, we will lose under arbitrary and capricious review. There is simply no reason to have an expansion of the administrative record to see whether there was stuff that we could have put in to defend the decision. Our point is that the points that they are emphasizing are simply not relevant legally under the APA. But if we're wrong about that, we'll lose. There's just no need to have an expansion of the administrative record. The fourth point I'd like to make is a couple of questions were asked about whether the rationale given was believable, whether you could really think that this was based on litigation risk. That's essentially an argument that the decision was made in bad faith. They haven't even tried to argue bad faith. They've tried to say that this should be in the administrative record to begin with, and I'd point your honors to this Court's decision in National Audubon Society v. Hoffman, which is cited in our briefs, that just underscores how stringent a standard the bad faith standard is. They don't come close to that standard. And the last point I'd like to make is on discovery. The magistrate judge and the district judge have repeatedly rejected our argument that there should be no discovery at all, including on their equal protection claim where our position is under the Supreme Court's decisions in Armstrong and the AADC, there should be no discovery. There's simply nothing left to do in the district court on that threshold fundamental point. We could quibble about how many documents we're going to have to produce, but our legal argument that there should be no discovery at all has been ruled on and has been rejected, and that's why we're seeking mandamus on the discovery piece too, and I will note again that the Supreme Court stayed the discovery in California. Thank you. Thank you, your honor. We'll reserve decision. Thank you all, and we'll turn to the day calendar in just a moment.